IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JACK CAMERON**                                                        **PLAINTIFF**

**V.**                                           **CIVIL ACTION NO.:** 3:20-cv-184-DPJ-FKB

**PIONEER AUTOMOTIVE INDUSTRIES LLC**               **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** the Plaintiff, Jack Cameron, by and through his counsel, Watson & Norris, PLLC, and files this action to recover damages for a violation of his rights under the Age Discrimination in Employment Act, as amended, (ADEA) against Defendant Pioneer Automotive Industries LLC. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**PARTIES**

1. Plaintiff Jack Cameron is an adult male citizen of Rankin County, Mississippi who is over the age of forty (40) and thus is a covered "employee" as defined by the ADEA.

2. Defendant Pioneer Automotive Industries LLC is incorporated in the state of Delaware, licensed to do business in the state of Mississippi, and may be served with process by serving its registered agent: Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, MS 39110. Defendant is person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and thus, is a covered "employer" as defined by the ADEA.

## JURISDICTION AND VENUE

3. This court has federal question and civil rights jurisdiction for a cause of action arising under the ADEA.

4. This Court has personal and subject matter jurisdiction over the Defendant and venue is proper in this Court.

5. Plaintiff timely filed his Charge of Discrimination with the EEOC on February 11, 2019, a true and correct copy of which is attached as Exhibit "A." After investigation, the EEOC issued a Notice of Right to Sue on January 15, 2020, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this cause of action within ninety (90) days of receipt of his Notice of Right to Sue.

## STATEMENT OF THE FACTS

6. Plaintiff, currently a 65-year-old male, previously worked for Defendant over a five-year period from 1987 to 1992.

7. During that time, Plaintiff hired John Pope as a Product Analyst and he reported directly to Plaintiff.

8. After leaving Defendant to pursue promotional career opportunities, John Pope and Plaintiff remained in contact.

9. Plaintiff would advise him from time to time regarding customer contacts and relations, as well as seeing him at frequent industry events.

10. Plaintiff considered John Pope to be a colleague and close friend.

11. Plaintiff had a successful career in the automotive aftermarket, served on several industry association boards, made numerous industry contacts and close relationships.

12. It is because of Plaintiff's experience and industry contacts that led John

Pope to contact Plaintiff regarding the possibility of re-joining Pioneer after more than 25 years to help develop the Program Distribution Group market.

13. John Pope advised Plaintiff that there would be some concern over Plaintiff's age and how long Plaintiff intends to work past normal retirement age.

14. Specifically, John Pope told Plaintiff that president, Jorge Frias would have concerns about his age and how long he would be able to work prior to retirement being that Plaintiff was 62 years old at the time.

15. Plaintiff told John Pope that Plaintiff had no retirement plans and expected to work at least until age 70.

16. John Pope told Plaintiff "to stick with that."

17. At the time, Plaintiff was employed by Brake Parts, Inc. as National Sales Manager, a $100M manufacturer of automotive aftermarket products.

18. Plaintiff's annual salary was $120K plus a bonus potential of 25% of his base salary.

19. The company was located in McHenry, IL, and Plaintiff worked from a home-based office but spent one week a month in McHenry.

20. Plaintiff formally interviewed with John Pope and Jorge Frias.

21. Sure enough, during the face-to-face interview in their Meridian, MS office with John Pope, Senior VP and Jorge Frias, President, the question regarding Plaintiff's age and how long Plaintiff intended to work was asked by Jorge Frias as John Pope expected.

22. Plaintiff told them both that he had no plans to retire and expected to work as long as he could, which seemed to be a satisfactory answer to Jorge Frias at the time.

23. Days later Plaintiff received an offer to join Defendant and after brief negotiation, Plaintiff accepted the position of VP of Business Development to develop the Program Distribution Group market with a salary of $120K annually and an agreed start date of March 20, 2017.

24. Within the first 30 days, Plaintiff secured meetings with every major program distribution group and well on the way of signing agreements with each.

25. Also, Plaintiff made significant changes in independent sales representation and commission structure, as Defendant's current reps were not equipped for this market channel. However, 60 days from Plaintiff's hire date, Defendant's parent company announced the acquisition of a large competitor, ATP, Inc.

26. On May 24, 2017 the acquisition was announced including Plaintiff's appointment as VP of Sales for the new company, Automotive Technology Products, LLC in addition to his current position of VP of Business Development at Pioneer Automotive Industries.

27. Internally, it was announced that the remaining ATP sales executives consisting of a SVP of Sales and VP of Sales, were no longer with the new company. The other sales team consisting of 2 @ Regional Sales, 2 @ Territory Sales, and a Sales Support Manager, were previously dismissed.

28. All correspondence directed to those individuals was now to be forwarded to Plaintiff.

29. Even though Plaintiff received the additional title without the support of the previous staff, there was no change in Plaintiff's compensation.

30. ATP was heavily entrenched in the Program Distribution Group market space and enjoyed a significant majority market share. This completely changed

Plaintiff's task from that of developing a market to managing an existing market.

31. Additionally, since the former ATP was in financial difficulty, business and customer relations suffered greatly.

32. Plaintiff's priority was to stop the migration of Defendant's customers to the competition and build trust in the new company.

33. That was a trying first year, managing the transformation of two companies into one, especially with many integration issues.

34. In May of 2018, John Pope gave Plaintiff the additional responsibility of managing the largest ATP retail account, Pep Boys/Auto Plus which he had previously been handling, adding even more responsibility.

35. After more than a year of managing what used to be managed by 7 people at ATP by himself, Plaintiff put forth a written recommendation to his boss, John Pope requesting additional sales support.

36. Plaintiff's travel schedule in the past year especially coast to coast was too much for one person to properly handle and help was desperately needed.

37. Plaintiff submitted the recommendation to John Pope sometime in June or July of 2018.

38. Plaintiff's recommendation included the conversion of two national house accounts to Defendant's sales reps at a minimal commission.

39. It further requested an additional salesperson, if not immediately at least to be funded in the next year's (2019) budget.

40. Further, if a person could not be added then at least consideration for an increase in Plaintiff's compensation either in salary or commission in recognition of the increased workload.

41. However, despite repeated reminders over the ensuing months to John Pope for a response to his recommendation, each time John Pope would tell Plaintiff "this was not a good time."

42. In the meantime, other departments including Customer Service, Product Marketing and IT all had increases in staffing.

43. Finally, in late January 2019 after more than 6 months since submitting his recommendation with no response and the 2019 budgeting process long past with no word as to any additional funding for sales support, in fact Plaintiff never received a final budget for 2019, Plaintiff pressed John Pope for a response.

44. Plaintiff asked if there was any relief insight or if he needed to be making retirement plans since Plaintiff was turning 65 in 3 months.

45. John Pope promised Plaintiff that he would discuss with Jorge Frias and get back with him.

46. A couple of days later, Plaintiff was arriving at his home office from a customer meeting in Dallas, TX when he received a phone call from John Pope.

47. Anticipating a discussion regarding his recommendations, instead John Pope informed Plaintiff that he was "terminated effective immediately."

48. Plaintiff asked him why and John Pope stated: "it was a tough decision, but <u>they felt they need someone longer term in the position</u>."

49. John Pope then stated: "I discussed this with Jorge, this is him not me."

50. At no time during the conversation did John Pope tell Plaintiff that his position was being eliminated nor informed of any performance issues.

51. Plaintiff then asked if there was any transition period or even severance, John Pope answered "no" that the termination was effective immediately.

6

52. Plaintiff asked about the company furnished cell phone and laptop. John Pope asked that Plaintiff mail these items, but Plaintiff told him that he was concerned about being reimbursed for shipping.

53. John Pope said he would send someone to pick them up.

54. That was the end of the call.

55. Since in their previous phone conversation Plaintiff asked about the need for making retirement plans and the only reason stated by John Pope for Plaintiff's termination was "they felt they need someone longer term in the position," it is obvious that Jorge Frias had lingering concern over Plaintiff's age.

56. Defendant hired when he was 62; however, Jorge Frias expressed significant concern regarding Plaintiff's age during the interview process.

57. Ultimately, Jorge Frias' concern resulted in Plaintiff's termination of employment because of his age.

58. Based upon the statements made, Jorge Frias clearly saw Plaintiff as too old and too close to retirement age to continue in his position with the company.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE ADEA – AGE DISCRIMINATION

59. Plaintiff alleges and incorporates all averments set forth in paragraphs 1 through 58 above as if fully incorporated herein.

60. Defendant's actions constitute intentional discrimination on the basis of age in violation of the ADEA. Specifically, Plaintiff is over the age of 40 and was more than qualified for his position with Defendant; however, Defendant terminated Plaintiff based on the reasoning of needing "someone longer term in this [Vice President of

Sales] position."

61. The unlawful actions by the Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory right of Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED**, Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Reinstatement and promotion or front pay in lieu of reinstatement;
2. Back pay;
3. Lost benefits;
4. Liquidated damages;
5. Pre-judgment and post-judgment interest;
6. A tax gross-up and all make whole relief;
7. Attorney's fees;
8. Costs and expenses; and
9. Any other relief to which he may be properly entitled under the ADEA.

THIS the 19th day of March 2020.

Respectfully submitted,

JACK CAMERON, PLAINTIFF

By: _____
Louis H. Watson, Jr. (MB# 9053)
Nick Norris (MB#101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
1880 Lakeland Drive, Suite G
Jackson, Mississippi 39216-4972
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
louis@watsonnorris.com
nick@watsonnorris.com